I'll rise. This court is now in session.  Case number 3-16-0619 Claude E. Campbell Declaration of Trust Barbara Deiderman and Greg Campbell Appellees by Timothy Roberts v. Russell Campbell Appellant by Richard Woodman Please proceed. I represent Greg Campbell. The opposing party in terms of the reality of this matter is his brother Greg Campbell. Their father is Clyde Campbell and Mr. Campbell in February of 2012 did a declaration of trust. In April of 2012, April 30th to be precise, Mr. Campbell signed assignments of his interest in the LLC and his interest in the land trust to his son Russell Campbell. The signed documents were handed directly to the secretary for the attorney of Russell Campbell. Something that Mr. Clyde Campbell would have known immediately and something which the trial court found to have occurred, meaning that there had been present delivery of the documents. Now, these things were held in the trust, right? They were. And yet he attempted to transfer individually. He did. Is there a problem with that? Under long established Illinois law, which is laid out in detail in our brief, if you are the sole beneficiary of a trust, let alone the grantor and the trustee, the law says that you can make a valid gift of that property in the trust whether you say you are doing it as beneficiary or whether you say you are doing it as the trustee. The cases are cited at great length there and I would say to the court without hesitation that those cases are uniformly declared to be the law of Illinois. And that they come from both the Supreme Court, the appellate court, and that the trust, the treatises on this subject, be they Illinois law and practice, Amjur, or probably with somewhat more respect, the restatement of trust, part three, section 51, make it clear that the beneficiary of a trust may make that gift and the only exceptions to that are where the trust is set up as a spendthrift trust, which this clearly was not, or where it is set up as a discretionary trust. That is, the trustee has the discretion to give the beneficiary some or all of the assets of the trust. So I believe that the case law that you will find in our brief is solidly on point and in our favor. Fundamental one, the litigation began here when the trustees of the Declaration of Trust determined that they wanted to know were these assignments valid or not. The first argument laid out by Gregory Campbell was that he made these assignments as an individual, not as trustee, and therefore they were invalid. For the reasons that I just went through, we filed a motion for summary judgment on that point, partial summary judgment, saying these are valid whether he signed them as beneficiary or as trustee. The trial court granted the motion of the opposing party, Greg Campbell, we believe in the face of overwhelming case authority from the Appellate and Supreme Courts of Illinois. The second issue raised in the pleadings by Greg Campbell was the claim that... And now in this case, none of the transfers were made as beneficiary or as trustee. There was no label on it either way. That is correct, Your Honor. So we've assumed it would have to be as beneficiary.  Well, it has to be one or the other, I would assume. Perhaps you disagree. But I don't know what capacity the gentleman would have had. Individual capacity. Well, yes, and if the question is can he make it as an individual, then I believe you will find the case law on point, as I have said, that he can do so because he's the only beneficiary, he's the grantor, he's the trustee, and he's under no restrictions such as spendthrift or discretionary trust. The second issue which arose was the question of whether the documents, the assignments, were testamentary substitutions. The court said that because they contained the language that says they're effective on my death, that they become a testamentary substitute. We filed a motion saying that should be stricken by partial summary judgment because the language itself has been held many times by the Supreme Court and the appellate court in Illinois to say effective on my death doesn't make it. It makes a future transfer if there is a present delivery of the document to the donee. Makes a present transfer of a future entry. That is correct. The court's error in this case, we believe, is by taking the position that you cannot make a present transfer of a future interest. Our position is the law, the court has often done so, from the Supreme Court on down, in cases like Puda v. Puchacic in which the language is exactly what we have here and the deed was intentionally held by an agent of the donee until after the death of the donor. Directly on point and we believe there are several other cases you will find with language that's very clear on that point. Now, I would go so far as to say, if I may go back to the question, could this assignment be made by an individual? The answer to that is, though we have argued this thoroughly at the lower court, also on the motion to vacate, and now we've filed briefs here in the appellate court, we have not seen a shred of authority that suggests that the individual, if he is the sole beneficiary under no other restrictions, cannot make a gift as an individual or as a beneficiary. None has been cited. Now, a second point which the lower court judge made, and I must say I have never been able to understand this point, though I tried to get an explanation when we argued the motion to vacate is, that under the documents involved here, the trust in particular, it is said that one could not make a gift of a partial interest in an asset. You could only make gifts of full interest in assets. I will rely on what we have said in our brief on that point, because there is simply nothing in the trust that suggests that a person cannot make a gift of what they have in their trust, even if what they have in their trust is a partial interest and not a whole interest. And where the trial court came from on that point, at least at this point, nothing has been given to me that would provide an explanation, because you're welcome to look at the language in here, and in the trust, Mr. Campbell chose to write that he had the power to make gifts in any form and in any way that he wished to do so. There is nothing in these trusts that would suggest to you for a moment that Mr. Campbell intended in his own grant or trust to limit what he could do. What about these rights of first refusal? All right, let's take those on. And I'm going to have to take those on into two groups, Justice Smith. First, with regard to the rights of first refusal that are in the LLC, there was a draft composed at some point in time, which would have, had it been signed by the parties, provided for rights of first refusal, but that right of first refusal agreement, the operating agreement for the LLC, was never signed, and admittedly never signed, and the trial court judge said, I'm not going to pay any attention to this because it was never signed. So then we go to the question of the right of first refusal, whether it be in the bond trust or whether it be in the declaration of trust. Both of those have language in them cited, I'm afraid repeatedly in my brief, saying that nothing in the document, nothing in the trust, is a limit on the ability of Clyde Campbell to make a transfer by gift, by will, or by intestate succession. Well, does that language, as you just cited, render the right of first refusal language superfluous? No, it does not. It's terribly irrelevant if anybody who owns property in those trusts wants to sell it. It becomes inapplicable only in those cases where the party wants to give it away. If it's a gift, there's no right of first refusal that applies. But if the parties wanted to sell it, then they have to... sell, transfer, or otherwise dispose of it. And in response to that, and that's a point that I faced in the trial court as well, the more specific language normally controls over the less specific. Now, a transfer is obviously a very broad term. It includes a lot of different types of transactions. But a gift, and this is clearly a gift, the re-filed it, affidavit, nobody disputed it, there was no money exchanged. The gift is the more specific language, and because it's the more specific, that portion of the trust prevails. Two minutes, please. Well, then, would you agree with me, then, that that language would at least render everything after the word sell, in other words, transfer, or otherwise dispose of certain persons? I believe that there's a rule of construction that says, we have this group of words together, that they will be interpreted as being of similar importance. And I would argue that where the contract says gift, by will or by intestate succession, that's one group of things where you are giving the property away, no consideration. Then, if you go to the other part of that language, you have a situation where clearly you are dealing with transactions in which money is being exchanged. This is a business transaction, and that's where the right of first refusal must apply. I said it wouldn't have to be money. Sometimes I live in a farming community. It could be a 1031 exchange or whatever. A black acre for a green acre. Correct. I would say that that would be true. But this was a pure gift. Time. Shall I complete, unless you have other questions? You can go. You may proceed. Thank you, Your Honors. My name is Tim Roberts. It's my pleasure to represent Greg Campbell in this matter. And we request that the Court affirm the verdict of Judge Heidi Benson below, in which she basically declared that the two assignments that were made, I believe in April of 2012, to be null and void is what our request is. I believe our reasoning is supported in at least four different contexts in our brief here, and I'd like to summarize some of them. But I think, first of all, context is important, because your job, as is ours, is to present what the intention of Mr. Clyde Campbell was, correct? And I think I'd like to emphasize just a few things from that, that, again, I'm also from the small farming community, that I think are shown of the record here that are very pertinent to a lot of the analysis in this matter. First of all, you're dealing with Clyde and Helen Campbell, 86 and 85 years of age. Three children. Dispute, obviously, between the two of them, the brothers back there, in this case. But there's also Bob Devener, an off-farmer. That's very common in the farming context. In 2011 and 12, Clyde and Helen got incredibly, in my mind, proactive. I'm starting to see this a lot more in my state planning practice. They got out there. They knew they had several farms. They knew, well, that could be a little dicey issue after we're gone. Maybe we should deal with this while we're alive, right? Divided between the two guys that farm, Greg and Russ, and the off-farmers divide the farms. So they get together. They actually hire a mediator. They have attorneys. They actually have multiple meetings, Your Honors, to try to work through this and try to solve this pre-death rather than post-death. That's clearly, I mean, nobody said this, but that's clearly their intention from the facts on that. Judge Hingliff, very excellent. State planning attorney assists Clyde and Helen in the drafting of this. They get the opinions. They seek and have multiple meetings with the children, all of the children, to get their opinion. Well, do you want this farm? Do you want that farm? You know, that sort of thing, multiple meetings. And the undisputed facts are that Clyde and Helen ended up dividing up these farms between the three children. And probably they were trying to be fair, right? I can't say that because it's not of the evidence, but they considered, obviously, the opinions of everyone. But I think that the general purpose was to do the dividing up of the properties through a trust mechanism so you don't have to do it post-death in a probate when there could be fights about who gets what. And then you end up boxing the farm and it goes to the off-farmer or some of the neighbor that they don't really want to have. I mean, clearly it could be any of those things. But this culminated in February 24th of 12 with Clyde and Helen both doing the trust and the will and, again, divides between the children, separated them out. And it did what is often done. It's already been discussed a little bit on Mr. Whitman's presentation. It did rights of first refusal. And why would someone do that? Well, generally rights of first refusal are done to keep, potentially, farms in a family, not going to a neighbor, not going to someone else. Giving the son, if he wants to sell it to someone or transfer it to someone else, a chance to step in his shoes. I mean, I think those are very important things to consider as a part of the context here. And it also did what you often do. You want, in a close working family arrangement, you want full disclosure. So what do you do in documents when you're drafting them? You put together languages. Hey, we need to be all above board here. Whenever there's an endorsement or a transfer of a unit or some sort of mechanism, legal mechanism, hey, you've got to make it known to the other folks. Because don't forget the two major things in this realm are the LLCs and the trusts were just one-third owned by Clyde. Helen didn't do anything with it. Son Greg already owned the other one-third units in this farming enterprise. He had owned it, I think, for many years. And so what would happen? We do these things. They're in the nursing home. We get this done after multiple months. And then we get these documents done in February of 2012 and then two months later. Clyde, again, 86 at the time, not represented by an attorney. And again, this isn't part of this case because I also have an undue influence case on this. But he comes in and executes these two documents that are at issue in the case here today. And then both Helen and Clyde die within three or four months later. So that puts us in the place today. But I think it's very important to understand the context on that. Declaratory judgment was brought by both my client and also his sister. And it was a lot more affirmatively stated than what Mr. Whitman exposed. They didn't say interpreted. They're saying we believe these are null and void and for the reasons that we're going to express herein. And to declare in that complaint whether these documents are effective on the date of death. There's really just four or five major facts that I think warrant emphasis. They've already been touched on by Mr. Whitman, and I'll get my spin on them here in a little bit. But there's really just four or five facts that I think are important to understanding on that. And, of course, first of all is just the language. This assignment shall be effective upon my death. Sometimes we get bogged down in the legalese. At least I do. And sometimes I find it refreshing to step back and just say, what's common sense say about that? Effective on death. What's that sound like? Does that sound like a testamentary disposition? Or does that sound like somebody trying to do that in a violence? Well, what's the law say about it? The law is obviously also important. And the law basically says, I think the most important case I think on this case is on page 14 of my brief, as I recall. The name of the case was, but it basically says, of course, it depends on the intention of the grand tort. And that's why I start with that on this. And it basically, in my mind, says you've got to have all, if it's not a regular gift. And again, where Heidi Benson, I think, got off on this and moved this into a correct result. She said there wasn't a present delivery. Because one of the things the law says basically on several pages of my brief, Mendelsohn's the major case, says there has to be delivery with the intention of passing title at that time. And Mendelsohn's, again, you had a context slightly different because we have assignments in this case. Let me just ask, do you agree or dispute whether or not you can make a present delivery and pass present title to a future interest? I believe that's true, conceptually. And a lot of my argument in one and two is saying, I agree with a lot of what Richard Whitman says, but it's not what happened in this case, is my interpretation. Is that an answer? Yes. Okay. And Mendelsohn basically says that in that case, it was a slightly different context. It was deed. And the deed wasn't recorded. Now, the analogy, of course, in our case is similar to recording is, was it transferred or endorsed over on the books? You know, whether it's in the trust books or whether it's in the LLC books. It wasn't done. So we're saying that that is, again, it's not shown in the records. It's clearly intended only to become operative in the event of the death. And so, therefore, it's a testamentary disposition. And, of course, I haven't said it yet, but I'm sure the Court knows, statute wills. If you don't have two witnesses, as was the case in this matter, where there's two affidavits and only one witness, it fails. I mean, I believe Mr. Whitman would agree with that. If there is a statute of wills requirement here, it would fail. And what I think, you know, Mr. Whitman has many cases cited for propositions that are accurate assertions of the future interest, present interest thing. But, again, the facts are just so dissimilar. In our case, we've got, of course, the one thing I haven't really referenced is we've got a purported transfer of trust property. Well, I don't know about you, but in my practice, if we're transferring something that's owned by a trust, you're normally signing it, if you're authorized to sign, as X, Y, Z person trustee. I mean, that's what you would expect to see here. Instead, we have no reference to that. And, frankly, he cannot transfer anything in his individual name. He cannot transfer trust properly. If I'm the sole beneficiary of a trust, and, obviously, as a sole beneficiary of that trust, generally, what I'm going to get happens on the death of somebody else. Can I, during my lifetime, transfer that? You can transfer it, but I think you're going to have to go through whatever the document says to go through the whole litany of requirements, whether it's a right of first refusal, whatever it is. I mean, it's bound by the instrument. And, again, that's the distinction I think that's important. Some of the cases cited by Mr. Whitman don't have what we've got in this case. We've got rights of first refusal. We've got documentation that says you've got to have endorsements. You've got to show it in the books to have it being effective. And we've got language that says, folks, you have to strictly comply with these requirements. So is that responsive? The LLC, though, I mean, is there a requirement that they comply with an unexecuted operating agreement? Something that had never started and become valid? Yeah. The LLC, I mean, I think the evidence is unrefuted. I mean, of course, it's my client's affidavit stating that we were intended to be bound by it. But who else is going to testify to that? I mean, both of the other two owners of that LLC are deceased. My client was obviously believed and testified under oath, subject to perjury, that that was the intention, to be bound by this document, so they just forgot to sign it. And the case law is very clear in Illinois that that's enough. Now, Judge Benson, I don't think, reached the issue. Why should she? She'd already knocked this assignment down on about four different reasons. Why push the envelope a little bit on a de facto issue, right? But I think you could all rule, again, that there's maybe a fifth reason for striking down these documents as null and void. I think it's completely supported by the record, unrefuted. Well, did the trial judge say, as far as the LLC was concerned, that she wasn't giving attention to that as it was on the assignment? What was her position? I wish I could find it quickly, because it's in my brief. I apologize. But what I think she said is, I'm not dealing with it at the motion for summary judgment level. Okay. So I think she's intuitively saying, well, maybe I'm not comfortable with going that far at this level. And that was obviously her prerogative. Now, I think, given that she'd already stricken these on about four of the grounds, why stick one more out there that could have been more questionable? Definitely more questionable. Two minutes, please, counsel. Control. Back to the issue on this present gift of a future interest. I mean, to me, the Illinois courts are, in many instances, and I'm referencing mostly on pages 15 and 16 of my brief, I mean, it's an issue of control. Okay, you do this. Have you really given up control? And that's an important thing. Did you get a corporate meeting? Did you do a gift tax return to show? Go ahead. It looks like you're reformulating. I'm just thinking, if you're giving a future interest, for example, in retaining a life estate, one generally doesn't give up control. It says, look, this is mine while I'm alive. Well, I assume room temperature is yours. And so you don't give up control, right? Right. I mean, clearly in a life estate type thing, yes. Again, some of these cases are, you know, did you reserve control? I mean, it doesn't address, you know, in this type of question. And, again, the major, I guess I probably have a minute, it sounds like, I really invite, I believe it was your question, Justice Schmitt, invite the court to ask when looking at the declaration of trust at the last sentence, which is what Mr. Whitman springs on, is to ask whether Judge Benson and my arguments are appropriate or whether his is. Because I believe it clearly renders everything else in paragraph three and four superfluous if read that way. Because clearly, I mean, it's, I think it just renders it moot. And I guess I can't say it more succinctly than that. And Judge Benson referenced that also. Any other questions? Thank you. One of the things I want to make clear is this case comes up on appeal on really two bases. One, they are trying to defend the summary judgment granted in their favor. And, number two, I am saying that our summary judgment motion should have been granted because the trial court was wrong on the basic, well-established law on both points. Well, hypothetically speaking, it should prevail on issue number one. I mean, there is an issue of, there are allegations of undue influence that would seem to prevent summary judgment in your favor. Your Honor, I will be more precise. The summary judgment motions I filed were both denominated partial summary judgments. One to strike the allegations of paragraph 16A. The other to strike the allegations of paragraph 16B. I did not ask for a complete judgment because I recognize that that issue must still be tried. Okay, so partial summary judgments are interlocutory orders. Are they not even appealable? I believe that there was a finding under Rule 304A in the final order by Judge Benson in this case making these appealable. But, quite frankly, I can't say that with 100% assurance. I'd like to make just a few points and then I realize it's lunchtime. Please note that the first half of my opponent's argument was based on asking you to interpret the intention of the parties based on his version of the facts. We've had no trial here. And because there's been no factual findings, these are motions for summary judgment. There were some facts that were not contested, but the intention of the parties in doing the earlier declaration of trust, etc., those have never had their day in court. And to try to persuade you to make a preliminary decision on where those facts go is really not what summary judgment is about. Now, I'm coming before you today because I believe that the lower court judge is wrong, dead wrong, on two legal propositions. One, that an individual or beneficiary in a trust cannot assign their interest in trust assets. I think the law in that area is beyond question. We should have had summary judgment on their allegation on 16A because of that. Number two, with regard to the question of whether the assignments are testamentary substitutes, I believe the law is overwhelming that if there's present delivery, it cannot be a testamentary substitute. And please remember that the trial court made a finding that there was present physical delivery in this case. Let me just ask you real briefly. Issue number one you just posed, you said, well, you know, can this person make an assignment? But isn't really the issue, at least part of the issue, is whether if that trustee is going to make an assignment, whether he's got to make it clearly in his or her capacity as trustee as opposed to an individual capacity. That is the issue raised by my opponent. That is the position taken by Judge Benson. And I say that based on a plethora of case law from the state of Illinois, that is not the law. They don't have to say, I do this as trustee. And that question is, I think we're on the same page as everybody. One minute, please. As to the I, I cannot say to you that all of them, all of them use the language beneficiary, whether they use the language individual or whether they fail to designate the capacity. But don't say it's a trustee. We're told that the language on my death means that that is testamentary. And I say, number one, don't ignore the rest of the assignment, which is all in the present tense. And the on my death is used to designate the difference between a life estate and a remainder. But it doesn't matter if there's been present delivery, because if there's present delivery, that language under multiple cases says that is a present delivery with no aspect of testamentary substitute. Final argument. They would say to us that these assignments have to be recorded somewhere on books in order to be a valid document. And I advise the court to look at the case law, which does not say that. As long as it is transferred out of the possession of the donor, even if they never record the deed or whatever it is until after death, that is a valid present delivery. And the Supreme Court's case in Huda, K.O. New D.A. v. Patrusik is directly on that point. I have nothing else unless the court has questions. Thank you, counsel. Thank you both for your arguments. And the court will take this matter under advisement and render a decision with dispatch. And we'll take a recess now. Court is now adjourned.